[Cite as *State v. Johnson*, 2017-Ohio-6930.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO.  1-16-41

     v.

AMOS K. JOHNSON,                 O P I N I O N

     DEFENDANT-APPELLANT.

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2015 0169**

**Judgment Affirmed**

**Date of Decision:   July 24, 2017**

APPEARANCES:

    *Nikki Trautman Baszynski* **for Appellant**

    *Terri L. Kohlrieser and Kenneth J. Sturgill* **for Appellee**

**ZIMMERMAN, J.,**

{¶1} Defendant-Appellant, Amos K. Johnson ("Johnson" or "Appellant"), brings this appeal from the jury verdict of the Allen County Common Pleas Court convicting him of three (3) counts of Kidnapping, three (3) counts of Felonious Assault, one (1) count of Aggravated Robbery, and one (1) count of Having Weapons While Under Disability. On appeal, Johnson asserts that: (1) the trial court erred when it failed to merge his convictions for kidnapping and aggravated robbery; (2) the trial court erred when it assessed Johnson the $25.00 appointed-counsel application fee without making the ability-to-pay finding at Johnson's sentencing hearing; (3) the trial court erred when it imposed costs without proper notification; and (4) the trial court erred when it imposed unauthorized costs of prosecution. For the reasons that follow, we affirm Johnson's convictions and sentence.

*Facts*

{¶2} On April 21, 2015, Lacey Duckett ("Duckett") had Jessyca Shellenbarger ("Shellenbarger") and Johnson as guests at her home in Lima, Ohio. Also present in Duckett's home was Shellenbarger's four-year-old daughter, M.B. Sometime during that evening, Duckett, Shellenbarger, and Johnson engaged in illicit drug use. Later, at some point during the early morning hours of April 22, 2015, Johnson became suspicious of Duckett and Shellenbarger because his ring

and unused drugs were missing. When neither Duckett nor Shellenbarger confessed to taking the items, Johnson became angry and told them that no one could leave the residence until his items were found and returned.[1]

{¶3} Johnson threatened Shellenbarger and her daughter, M.B., with a gun in his attempt to get his items returned. Further, Johnson forced Duckett into the bathroom and destroyed Shellenbarger's phone after she attempted to call 9-1-1. However, Shellenbarger and M.B. were able to escape Duckett's house and get to a neighbor's home to call 9-1-1.

{¶4} When the authorities arrived (at Duckett's home), Duckett and Johnson were still in the home. After several requests to comply with police orders, Johnson surrendered and was arrested. Law enforcement searched Duckett's home and discovered a firearm stuffed under a mattress. Ammunition was also found in Johnson's jacket.

*Procedural History*

{¶5} On June 11, 2015, Johnson was indicted by the Allen County grand jury on eight criminal counts related to the incident. Specifically, Johnson was indicted on: Count One, Kidnapping, in violation of R.C. 2905.01(A)(3), 2905.01(C)(1), a felony of the first degree, with a three-year firearm specification pursuant to R.C.

---

[1] Testimony during trial revealed that while Johnson thought that his ring was missing, it was actually on his finger the entire evening. Attempts to inform Johnson that his ring was on his finger were futile. (*See,* 05/24/16 Tr., Vol. II, at 410).

2941.145(A); Count Two, Kidnapping, in violation of R.C. 2905.01(A)(3), 2905.01(C)(1), a felony of the first degree, with a three-year firearm specification pursuant to R.C. 2941.145(A); Count Three, Kidnapping, in violation of R.C. 2905.01(A)(3), 2905.01(C)(1), a felony of the first degree; Count Four, Aggravated Robbery, in violation of R.C. 2911.01(A)(1), 2911.01(C), a felony of the first degree, with a three-year firearm specification pursuant to R.C. 2941.145(A); Count Five, Felonious Assault, in violation of R.C. 2903.11(A)(2), 2903.11(D)(1)(a), a felony of the second degree, with a three-year firearm specification pursuant to R.C. 2941.145(A); Count Six, Felonious Assault, in violation of R.C. 2903.11(A)(2), 2903.11(D)(1)(a), a felony of the second degree, with a three-year firearm specification pursuant to R.C. 2941.145(A); Count Seven, Felonious Assault, in violation of R.C. 2903.11(A)(2), 2903.11(D)(1)(a), a felony of the second degree, with a three-year firearm specification pursuant to R.C. 2945.145(A); and Count Eight, Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(3), 2923.13(B), a felony of the third degree.

{¶6} On May 23, 2016 the matter proceeded to a jury trial. At the close of the State's case Johnson requested the charges be dismissed pursuant to Crim.R. 29, which the trial court denied. Thereafter, and at the close of the evidentiary portion of the trial, Johnson renewed his Rule 29 Motion to Dismiss, which was again

denied by the trial court. Thereafter, the jury found Johnson guilty on all eight counts and all firearm specifications contained in the indictment.

{¶7} On July 18, 2016 the trial court conducted Johnson's sentencing hearing. At sentencing the trial court found that Counts One and Five merged; that Counts Two and Six merged; and that Counts Three and Seven merged with one another. Thus, the State elected to proceed to sentencing on Counts One, Two, and Three. The trial court then sentenced Johnson as follows: Count One, (Kidnapping) six years plus a mandatory three years for the firearm specification; Count Two, (Kidnapping) six years plus a mandatory three years for the firearm specification; Count Three, (Kidnapping) six years; Count Four, (Aggravated Robbery) four years plus a mandatory three years for the firearm specification; and Count Eight, (Weapons While Under Disability) twenty-four months. All sentences were ordered to run consecutively, resulting in an aggregate sentence of thirty-three years in prison.

{¶8} At sentencing, Johnson was also ordered to pay the costs of prosecution, court costs, and the court-appointed attorney application fee of $25.00. Johnson did not object to the imposition of court costs, prosecution costs, or the court-appointed counsel application fee by the trial court at the sentencing hearing.

{¶9} From the trial court's entry of conviction and sentence Johnson timely appeals, and asserts the following assignments of error:

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE MR. JOHNSON'S CONVICTIONS FOR KIDNAPPING AND AGGRAVATED ROBBERY.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT ASSESSED THE $25.00 APPOINTED-COUNSEL APPLICATION FEE WITHOUT MAKING THE ABILITY-TO-PAY FINDING AT MR. JOHNSON'S SENTENCING HEARING.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED WHEN IT IMPOSED COSTS WITHOUT PROPER NOTIFICATION.**

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED WHEN IT IMPOSED UNAUTHORIZED COSTS OF PROSECUTION.**

**{¶10}** On appeal, Johnson contends that: (1) the trial court erred when it failed to merge Johnson's convictions for Kidnapping and Aggravated Robbery because the offenses contain the same victim, animus, and conduct; (2) the trial court erred when it assessed Johnson a $25.00 appointed-counsel application fee without making an ability-to-pay finding at the sentencing hearing; (3) the trial court erred when it imposed costs without proper notification, failing to notify Johnson at sentencing that the failure to pay court costs could result in community service; and (4) the trial court erred when it imposed the costs of prosecution.

{¶11} Before we commence our review, we note that Appellant concedes in his reply brief that Assignment of Error III only applies to sentences that involve the imposition of community-control sanctions, which Johnson did not receive. Thus, Johnson has withdrawn Assignment of Error III. Accordingly, we will only address Assignments of Error I, II, and IV.

*First Assignment of Error*

{¶12} In his first assignment of error, Johnson contends that the trial court erred by failing to merge his convictions for kidnapping and aggravated robbery. Specifically, Johnson contends that his taking of Shellenbarger's phone (which resulted in an Aggravated Robbery charge – Count Four) also resulted in the restraint of Shellenbarger (which comprised the Kidnapping charge in Count Three) and, as such, the charges should have merged. For the following reasons, we find this argument without merit.

*Standard of Review*

{¶13} "'A defendant bears the burden of proving that the offenses for which he has been convicted and sentenced constitute allied offenses of similar import.'" *State v. Vanausdal,* 3rd Dist. Shelby No. 17-16-06, 2016-Ohio-7735, ¶ 17, quoting *State v. Campbell,* 12th Dist. Butler No. CA2014-06-137, 2015-Ohio-1409, ¶ 18, citing *State v. Luong,* 12th Dist. Butler No. CA2011-06-110, 2012-Ohio-4520, ¶ 46. Additionally, a reviewing court may look to the information contained in the record

to make its allied offense determination. *Id.* An appellate court then reviews *de novo* the question of whether offenses are allied offenses of similar import. *State v. Potts,* 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 93 (3rd Dist.), citing *State v. Stall,* 3rd Dist. Crawford No. 3-10-12, 2011-Ohio-5733, ¶ 15, citing *State v. Brown,* 3rd Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 36.

*R.C. 2941.25, Allied Offenses of Similar Import*

Ohio's multiple-count statute, codified in R.C. 2941.25, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶14}** In *State v. Ruff,* the Supreme Court promulgated the following three-part test for determining whether offenses merged: "[u]nder R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate

animus." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 (2015), paragraph three of the syllabus. An affirmative answer to any of the preceding questions will permit separate convictions. *Id.* at ¶ 31.

*Relevant Statutes*

**{¶15}** Johnson was convicted in Count Three of Kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(3), 2905.01(C)(1), which provides, in part:

> No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * to terrorize, or to inflict serious physical harm on the victim or another. * * * Whoever violates this section is guilty of kidnapping. Except as otherwise provided in this division, * * * kidnapping is a felony of the first degree.

R.C. 2905.01(A)(3), 2905.01(C)(1). Johnson was also convicted of Aggravated Robbery, a felony of the first degree, in R.C. 2911.01(A)(1), 2911.01(C), which provides in pertinent part:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it. * * * Whoever violates this section is guilty of aggravated robbery, a felony of the first degree.

R.C 2911.01(A)(1), 2911.01(C).

*Analysis*

**{¶16}** Addressing the first *Ruff* factor, whether "the conduct constitutes offenses of dissimilar import," the Ohio Supreme Court has held that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph two of the syllabus. Similar to this Court's analysis in *Vanausdal,* we find that while each count involved the same victim, the harm that resulted from each offense is separate and identifiable. *See Vanausdal,* 3rd Dist. Shelby No. 17-16-06, 2016-Ohio-7735, ¶ 13 (Victim in that case suffered physical and emotional harm as a result of her rape; separately and identifiably, the victim also suffered emotional, mental, and psychological harm by Vanausdal's possession of sexually oriented material).

**{¶17}** In our review of the record we find that evidence was presented by the State supporting that Shellenbarger suffered emotional, mental, and/or psychological harm while being restrained by Johnson. (*See* 05/24/2016 Trial Tr., Vol. II, at 407-08; 428. "He threatened me that he would kill me. And he walked up right beside my daughter, if not touching her head with the gun, was right next to her head with the gun and told me to shut her up or he would kill her. * * * Told

me I wasn't going anywhere. And he told me to sit down and keep my ass on the couch." "* * * I had my daughter in my arms and I was scared * * *."). Shellenbarger's testimony supports that Johnson restrained her liberty by commanding her to remain on the couch and by terrorizing her and her daughter with a gun. These acts understandably caused Shellenbarger fear which we find to be consistent with her suffering a psychological, mental, or emotional harm due to Johnson's criminal conduct.

{¶18} In contrast, as to Johnson's aggravated robbery conviction, we find that Shellenbarger suffered a separate and different harm, that being the loss of her personal property, her cell phone, due to Johnson's additional criminal conduct. Shellenbarger testified that Johnson took her phone and rendered it inoperable. (*See id.* at 418. * * * [A]nd he came from the back and pulled it like that (indicating) and snapped it like that. * * * And I'm still not even sure on what exactly happened to it. I know it couldn't be used * * *."). Thus, Shellenbarger suffered property damage to her cell phone through Johnson's destruction of it which we find is separate and distinguishable from the emotional, mental, and/or psychological harm that she suffered when Johnson restrained her liberty and terrorized her with a gun.

{¶19} Accordingly, we answer the first *Ruff* question in the affirmative because the victim (Shellenbarger) in Counts Three and Four suffered separate and identifiable harms at the hands of Johnson. With this affirmative answer to the first

*Ruff* factor, separate convictions are permissible as to Counts Three and Four and we need not address the second and third *Ruff* factors. Accordingly, Johnson's first assignment of error is overruled.

### *Second Assignment of Error*

{¶20} In Appellant's second assignment of error, Johnson contends that the trial court erred when it imposed costs without proper notification. Specifically, Johnson contends that the trial court improperly imposed the $25.00 appointed-counsel application fee without making the required "ability-to-pay" finding at his sentencing hearing. Johnson also asserts that the trial court failed to notify him of this obligation (to pay the $25.00 fee) at his sentencing hearing. For the following reasons, we disagree.

{¶21} Johnson's assertion that R.C. 2947.23 governs the imposition of the $25.00 application fee for court-appointed counsel is misplaced, as R.C. 120.36, entitled "Application fee; Reports," is the proper statute addressing such process. R.C. 120.36 states, in part:

> (A)(1) Subject to division (A)(2), (3), (4), (5), or (6) of this section, if a person who is a defendant in a criminal case or a party in a case in the juvenile court requests or is provided a state public defender, a county or joint county public defender, or any other counsel appointed by the court, the court in which the criminal case is initially filed or the juvenile court, whichever is applicable, shall assess, *unless the application fee is waived or reduced*, a non-refundable application fee of twenty-five dollars.

> The court shall direct the person to pay the application fee to the clerk of court. The person shall pay the application fee to the clerk of court at a time the person files an affidavit of indigency or a financial disclosure form with the court, a state public defender, a county or joint county public defender, or any other counsel appointed by the court or within seven days of that date. If the person does not pay the application fee within that seven-day period, the court shall assess the application fee at sentencing or at the final disposition of the case.

(Emphasis added). R.C. 120.36(A)(1).

{¶22} Contrary to Johnson's assertion that the trial court needed to make an "ability-to-pay" finding prior to assessing a $25.00 application fee, our review of R.C. 120.36 reveals that no such finding requirement exists. We do find, however, that the application fee under R.C. 120.36 may be waived by the trial court. *See generally, State v. Kurth,* 6th Dist. Lucas Nos. L-15-1238, L-15-1239, 2016-Ohio-7698, ¶ 4 (trial court waived the $25.00 application fee after finding that such a fee would result in an undue hardship). However, the record contains no such request for a waiver by Johnson. Thus, we find that the trial court complied with the statutory requirements of R.C. 120.36 by requiring Johnson to pay the $25.00 fee at sentencing, and because Johnson never requested a waiver of such fee, we find no error present. Accordingly, we overrule Johnson's second assignment of error.

*Fourth Assignment of Error*

{¶23} In his fourth assignment of error, Johnson contends that the trial court erred when it imposed upon him the costs of prosecution. Specifically, Johnson states that the assessment of a $33.00 fee for a subpoena issued to M.B., the four-

-13-

year-old child victim of one of his charges, was impermissible because, as a matter of law, M.B. was not competent to testify due to her age.

{¶24} Johnson's argument lacks merit. Initially, we note that Johnson never objected to the imposition of court costs and the costs of prosecution, but instead, raises this issue for the first time on appeal. (07/18/16 Tr. at 27, 30). "An appellant's failure to raise an issue with the trial court constitutes a waiver of that issue absent plain error." *State v. Stiles,* 3rd Dist. Allen No. 1-08-12, 2009-Ohio-89, ¶ 31, citing *State v. Underwood,* 3 Ohio St.3d 12, 13, 444 N.E.2d 1332, (1983). The Ohio Supreme Court has held, pursuant to Crim.R. 52(B), that "'[t]he plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice.'" *State v. Long,* 53 Ohio St.2d 91, 95, 372 N.E.2d 804 (1978), quoting *United States v. Rudinsky,* 439 F.2d 1074, 1076 (6th Cir.1971). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Wickline,* 50 Ohio St.3d 114, 120, 552 N.E.2d 913 (1990).

{¶25} In our review of this assignment, we find that Johnson has failed to demonstrate plain error. Pursuant to R.C. 2947.23(A)(1)(a), "[i]n all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the *cost of prosecution*, including costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs."

(Emphasis added). R.C. 2947.23(A)(1)(a). Thus, the trial court followed the mandates of R.C. 2947.23 in assessing Johnson the subpoena cost relative to M.B.

{¶26} Further, Johnson's argument that the State *could have never* called M.B. as a witness also lacks merit. Johnson contends that M.B. couldn't have been called as a witness because she was incompetent to testify pursuant to Evid.R. 601(A). Evid.R. 601(A) states: "[e]very person is competent to be a witness except: those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A). However, the Ohio Supreme Court has provided the following guidance on this issue:

> In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.

*State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991). Accordingly, we find that Evid. R. 601(A) does not stand for the proposition, as suggested by Johnson, that a child under ten years of age *may never* testify, but rather that a child under ten may be competent to testify if so found by a trial court upon its proper inquiry under *Frazier*.

{¶27} Accordingly, we find that it was not plain error for the trial court to require Johnson to pay for the costs associated with the issuance of M.B.'s subpoena under the presented facts of this appeal. Johnson's fourth assignment of error is overruled.

{¶28} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**