[Cite as *State v. Tabor*, 2017-Ohio-8656.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                     :        Case No.   16CA9

    vs.                                     :

JARRON TABOR,                              :        DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                    :

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Nikki Trautman Baszynski, Assistant Public Defender, Columbus, Ohio, for appellant.

Justin Lovett, Jackson County Prosecuting Attorney, and Nick Wille, Jackson County Assistant Prosecuting Attorney, Jackson, Ohio, for appellee.

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 11-16-17
ABELE, J.

{¶ 1}   This is an appeal from a Jackson County Common Pleas Court judgment of conviction and sentence.   The trial court found Jarron Tabor, defendant below and appellant herein, guilty of possession of cocaine in violation of R.C. 2925.11(A).   The court sentenced appellant to serve nine years in prison.   Appellant assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE JACKSON COUNTY COURT OF COMMON PLEAS UNCONSTITUTIONALLY EXCLUDED A PORTION OF THE PUBLIC FROM JARRON TABOR'S PLEA AND SENTENCING HEARINGS."

SECOND ASSIGNMENT OF ERROR:

"TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE UNCONSTITUTIONAL CLOSURE OF JARRON TABOR'S PLEA AND SENTENCING HEARINGS."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ASSESSED, AND THE CLERK OF COURTS COLLECTED, UNAUTHORIZED COURT COSTS."

{¶ 2} On December 4, 2014, the grand jury returned an indictment that charged appellant with first-degree-felony possession of cocaine in violation of R.C. 2925.11(A), along with a major drug offender specification. Appellant entered a not guilty plea.

{¶ 3} The trial court subsequently set the matter for trial. A notice, signed by the court's assignment commissioner, advised the parties of the trial date and further stated:

Appropriate attire is required: No pajamas, shorts, tank tops, hats miniskirts, or halter tops. No children shall be brought to the Courthouse for your hearing. Our staff are "NOT BABYSITTERS." All cell phones are to be turned off before entering the Courtroom.

Appellant did not object to any of the provisions contained in the notice.

{¶ 4} On the day set for trial, the parties advised the court that they had reached a plea agreement. The state agreed to dismiss the major drug offender specification and appellant agreed to plead guilty to first-degree-felony possession of cocaine. The parties did not agree upon a sentencing recommendation, but instead, they agreed that each would be free to argue any lawful sentence.

{¶ 5} After appellant entered his guilty plea, the court set the matter for a sentencing hearing. The notice that advised the parties of the sentencing hearing date repeated the same

information concerning attire, cell phones, and children:

> Appropriate attire is required:  No pajamas, shorts, tank tops, hats miniskirts, or halter tops.  No children shall be brought to the Courthouse for your hearing. Our staff are "NOT BABYSITTERS."  All cell phones are to be turned off before entering the Courtroom.

Again, appellant did not object to any of the provisions.

{¶ 6}   After considering the arguments of counsel, the trial court sentenced appellant to serve nine years in prison and ordered him to pay court costs.   This appeal followed.

I

{¶ 7}   Appellant's first and second assignments of error both involve the same constitutional issue–appellant's right to a public trial.  For ease of discussion, we combine our discussion of the assignments of error.

{¶ 8}   In his first assignment of error, appellant asserts that the trial court's exclusion of children from his plea and sentencing hearings violated his right to a public trial and constitutes a structural error that mandates reversal.   Appellant alternatively argues that the court plainly erred by excluding children from the hearings.

{¶ 9}   The state argues that the trial court did not issue an order that excluded anyone from attending appellant's plea or sentencing hearings, but instead the notice that excluded children from the courtroom contained the court's assignment commissioner's signature.  The state thus asserts that appellant cannot show that the trial court issued an order that excluded anyone from appellant's plea or sentencing hearing.  Alternatively, the state contends that the court's exclusion of children from the hearings constitutes neither plain nor structural error because any exclusion of children from the courtroom is, at most, a trivial closure that does not

impact appellant's right to a public trial. The state argues that "the language in the hearing notices is properly understood not as language closing the court, but as language regulating the decorum of the court."

{¶ 10} In his second assignment of error, appellant argues that trial counsel rendered ineffective assistance of counsel by failing to object to the notice that prohibited children from attending his hearings. He asserts that counsel's failure to object constitutes deficient performance that prejudiced the outcome. Appellant claims that if counsel had objected, the trial court would have been required to state its reason on the record for excluding children. Appellant argues that the record fails to establish any reason for excluding children from the courtroom. He thus asserts that an objection would have caused the court to allow children to attend his hearings.

{¶ 11} The state also contends that even if trial counsel performed deficiently, appellant cannot establish that the outcome of the proceedings would have been different if the trial court had permitted children to attend the hearings.

A

RIGHT TO PUBLIC TRIAL

{¶ 12} "'The right to a public trial is an important, fundamental constitutional guarantee of both the United States and Ohio Constitutions.'"[1]  *State ex rel. The Repository, Div. of*

---

[1] The Sixth Amendment to the United States Constitution states that a defendant "shall enjoy the right to a speedy and public trial."

Section 16, Article I of the Ohio Constitution provides:

> All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

*Thompson Newspapers, Inc. v. Unger*, 28 Ohio St.3d 418, 420, 504 N.E.2d 37 (1986), quoting

*State v. Lane*, 60 Ohio St.2d 112, 119, 397 N.E.2d 1338 (1979), and citing *State v. Hensley*, 75

Ohio St. 255, 264, 79 N.E. 462 (1906). "[O]pen trials ensure respect for the justice system and

allow the press and the public to judge the proceedings that occur in our Nation's courts."

*Weaver v. Massachusetts*, — U.S. —, 137 S.Ct. 1899, 1913, 198 L.Ed.2d 420 (2017). "'[T]he

public-trial guarantee embodies a view of human nature, true as a general rule, that judges,

lawyers, witnesses, and jurors will perform their respective functions more responsibly in an

open court than in secret proceedings.'" *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81

L.Ed.2d 31 (1984), fn. 4, quoting *Estes v. Texas*, 381 U.S. 532, 588, 85 S.Ct. 1628, 14 L.Ed.2d

543 (1965) (Harlan, J., concurring). "The knowledge that every criminal trial is subject to

contemporaneous review in the forum of public opinion is an effective restraint on possible abuse

of judicial power." *In re Oliver*, 333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed.2d 682 (1948).

Thus, the public-trial "guarantee ' * * * is a cornerstone of our democracy which should not be

circumvented unless there are extreme overriding circumstances.'" *Unger*, 28 Ohio St.3d at 420

quoting *Lane,* 60 Ohio St.2d at 119.

{¶ 13} Before a court may circumvent a defendant's public-trial right by closing the

courtroom, the party requesting closure "must advance an overriding interest that is likely to be

prejudiced, the closure must be no broader than necessary to protect that interest, the trial court

must consider reasonable alternatives to closing the proceeding, and it must make findings

adequate to support the closure." *Waller*, 467 U.S. at 48.

{¶ 14} Additionally, we observe that

[a] trial judge has authority to exercise control over the proceedings and

the discretion to impose control over the proceedings. Nonetheless, the abridgement of a defendant's right to a public trial may occur only when necessary, and any closure must be narrowly drawn and applied sparingly.

*State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶51. Thus, although the right to a public trial is not absolute, exceptions are rare. *Weaver*, 137 S.Ct. at 1909 (explaining that although exceptions to the public-trial right "should be rare, a judge may deprive a defendant of his right to an open courtroom by making proper factual findings in support of the decision to do so").

B

PUBLIC-TRIAL VIOLATION IS STRUCTURAL ERROR

{¶ 15} A violation of a defendant's public-trial right constitutes a structural error. *Weaver*, 137 S.Ct. at 1908; *Drummond* at ¶50, citing *Waller*, 467 U.S. at 49-50, fn.9. A structural error "'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver* at 1907, quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Thus, a structural error that a defendant objects to at trial ordinarily mandates "'automatic reversal,'" "regardless of the error's 'actual effect on the outcome.'" *Id.* at 1910, quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The structural-error-automatic-reversal rule exists "to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Id.* at 1907.

{¶ 16} Moreover, "a structural error 'def[ies] analysis by harmless error standards." *Id.* at 1908, quoting Fulminante, 499 U.S. at 309. Structural errors are not easily evaluated for harmless error for three primary reasons: (1) "the right at issue is not designed to protect the

defendant from erroneous conviction but instead protects some other interest;" (2) "the effects of the error are simply too hard to measure," and (3) "the error always results in fundamental unfairness." *Id.* A structural error need not satisfy all three of the foregoing conditions, however. *Id.* Instead, "[a]n error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.*, citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), fn.4.

{¶ 17} A public-trial violation constitutes structural error "because of the 'difficulty of assessing the effect of the error,'" and because it "furthers interests other than protecting the defendant against unjust conviction." *Id.* at 1910, quoting *Gonzalez-Lopez*, 548 U.S. at 149, fn.4. The reason for classifying a public-trial violation as structural error is not, however, because it always result in fundamental unfairness. *Id.* at 1909-1910. Instead, "in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." *Id.* at 1910.

{¶ 18} A defendant who fails to object at trial to a structural error ordinarily is not entitled to an automatic reversal. *Id.* (pointing out that the automatic-reversal rule ordinarily applies when the defendant objects at trial to structural error). Rather, a defendant who fails to timely object to structural error ordinarily will be limited to plain-error review. *See Drummond* at ¶59 (explaining that "counsel's failure to object to the closing of the courtroom constitutes a waiver of the right to a public trial * * * "); *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶103 (noting that defendant's failure to raise public-trial issue during guilt-phase "waived" the issue); *see also United States v. Marcus*, 560 U.S. 258, 266, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010) (internal quotation omitted) (explaining that the plain-error

rule does not except "serious errors" from its application); *Puckett v. United States*, 556 U.S. 129, 140, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (noting that court has declined to decide whether structural error automatically shows that error affected substantial rights under plain-error analysis); *Johnson v. United States,* 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (stating that "the seriousness of the error claimed does not remove consideration of it from the ambit of the" plain-error rule); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶24 (stating that court has "rejected the notion that there is any category of forfeited error that is not subject to the plain error rule's requirement of prejudicial effect on the outcome"); *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶23 (observing that both United States and Ohio Supreme Courts "have cautioned against applying a structural-error analysis where * * * the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court"); *State v. Hill*, 92 Ohio St.3d 191, 199, 749 N.E.2d 274 (1991) (observing that structural-error analysis appears inappropriate in plain-error context); *State v. Creech*, 4th Dist. Scioto No. 12CA3500, 2013-Ohio-3791, 2013 WL 4735469, fn.11 (noting that courts have expressed doubt whether structural error analysis appropriate when error not objected to at trial); *see generally Levine v. United States*, 362 U.S. 610, 619–20, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) ("Due regard generally for the public nature of the judicial process does not require disregard of the solid demands of the fair administration of justice in favor of a party who, at the appropriate time and acting under advice of counsel, saw no disregard of a right, but raises an abstract claim only as an afterthought on appeal."). *But see State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶81 (holding that

defendant's failure to object to closure did not waive his public-trial right).[2]

{¶ 19} The rationale for requiring defendants to timely object to even structural error, or else forfeit all but plain error, is to prevent defendants from "remaining silent at trial only later to raise the error on appeal where the conviction would be automatically reversed." *Perry* at ¶23. Stated otherwise: "An expansion of Crim.R. 52(B), without justification, would upset the careful balancing of the need to encourage trial participants to seek a fair and accurate trial the first time against an insistence that any obvious injustice be promptly redressed." *State v. Morgan*, Slip Op. 2017-Ohio-7565, — Ohio St.3d —, ¶36, citing Rogers at ¶24. As the court explained in *Perry*, "our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected." *Id.* at ¶23.

{¶ 20} Thus, requiring a party to raise objections at trial

> serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the [trial] court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from "'sandbagging'" the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor. *Cf. Wainwright v. Sykes*, 433 U.S. 72, 89, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see also United States v. Vonn*, 535 U.S. 55, 72, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

556 U.S. at 134.[3]

---

[2] *Bethel*, a case that preceded *Drummond* by fourteen days, appears to directly conflict with *Drummond*. Because *Drummond* is the more recent precedent, we find it appropriate to follow its holding rather than the *Bethel* holding. Additionally, the other cited cases decided subsequent to *Drummond* appear more congruent with *Drummond* than *Bethel*.

[3] As noted in *Puckett*, the Federal Rules of Criminal Procedure prescribe the procedure for preserving

{¶ 21} For instance, in the public-trial context, "when a defendant objects to a courtroom closure, the trial court can either order the courtroom opened or explain the reasons for keeping it closed." *Weaver*, 137 S.Ct. at 1912. When, however, "a defendant first raises the closure" on direct appeal, "the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for the closure."[4] *Id.* Thus, a defendant who fails to timely object to an alleged public-trial violation forfeits all but plain error.

{¶ 22} In the case sub judice, if we assume, arguendo, that the trial court's notice that prohibited children from entering the courtroom constitutes a public-trial violation, and hence, a structural error, we believe that appellant, by failing to object to the notice, forfeited his right to challenge even this alleged structural error on appeal. However, although appellant's failure to raise the issue during the trial court proceedings means that he cannot now obtain relief under the structural-error-automatic-reversal rule, we may choose to recognize the error under the plain-error doctrine.

---

alleged error:

> In federal criminal cases, Rule 51(b) tells parties how to preserve claims of error: "by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."

556 U.S. at 135. In Ohio, Crim.R. 51 states:

> An exception, at any stage or step of the case or matter, is unnecessary to lay a foundation for review, whenever a matter has been called to the attention of the court by objection, motion, or otherwise, and the court has ruled thereon.

[4] We recognize that in *Weaver* the defendant raised the public-trial issue, not on a direct appeal, but rather, five years later in a motion for a new trial. Thus, the procedural context differs from the case sub judice. Nonetheless, we believe *Weaver* may fairly be interpreted to mean that a public-trial violation is subject to forfeiture when a defendant fails to timely object at trial, regardless of whether the issue is first raised on direct appeal or in a postconviction proceedings. The same rationale applies regardless of the particular procedural posture. Furthermore, we observe that earlier cases seemingly rejected the notion that structural error evades plain-error review. *See* cases cited *supra*.

C

PLAIN ERROR

{¶ 23} The Ohio Supreme Court recently reiterated the well-established rules regarding

the plain-error doctrine in *State v. Morgan*, *supra*:

> Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error" that was not preserved at trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). First, an error, "i.e. a deviation from a legal rule," must have occurred. *Id.*, citing *State v. Hill*, 92 Ohio St.3d 191, 200, 749 N.E.2d 274 (2001), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Second, the error complained of must be plain, that is, it must be "an 'obvious' defect in the trial proceedings." *Id.*, citing *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90 (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518, 684 N.E.2d 47 (1997). "Third, the error must have affected 'substantial rights.' We have interpreted this * * * to mean that the trial court's error must have affected the outcome of the trial." *Id.*
>
> Even when a defendant demonstrates that the factors under Crim.R. 52 exist, "we have 'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" (Emphasis and brackets in Rogers.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶23, quoting *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Id.* at ¶¶35-36.

{¶ 24} Ohio courts may not presume prejudice in the plain-error context. *Id.* at ¶50,

quoting *Rogers* at ¶24 (noting that court has "'never recognized the hybrid type of plain error * *

* that is presumptively prejudicial and is reversible error per se'") *Id.* at ¶50. Consequently,

"showing that an error occurred is not enough" in the plain-error context. *Id.* at ¶51. Instead,

the defendant "also has the burden to prove that the error affected the outcome of the

proceeding." *Id.* (explaining that error in failing to appoint guardian ad litem at amenability

hearing would affect the outcome of proceeding in juvenile bind-over situation if, but for the error, juvenile would not have been bound-over). A defendant's "speculation cannot prove prejudice." *Id.* at ¶53.

{¶ 25} In the case at bar, if we assume, arguendo, that the trial court's notice to exclude children from the courtroom obviously violated appellant's public-trial right, we do not agree with appellant that the alleged public-trial violation affected the outcome of the proceedings. Appellant claims that he need not show that the alleged error affected his decision to plead guilty or that he would have received a lesser sentence in order to demonstrate that the alleged error affected the outcome of the proceedings. Instead, he asserts that he need only show that but for the alleged error, "he would have received a public proceeding in which to enter a plea and receive a sentence." We, however, do not agree with appellant's interpretation of the phrase "affected the outcome of the proceeding."

{¶ 26} In *Morgan*, the court did not examine the prejudice component by considering whether, but for the failure to appoint a GAL at the amenability hearing, the juvenile would have received an amenability hearing with a GAL. Rather, the court looked to whether the absence of a GAL (the plain error) affected the outcome of the amenability proceeding, meaning whether the juvenile would not have been bound over if the court had appointed a GAL to represent him at the amenability hearing. *Id.* at ¶51 (stating that under plain-error review, defendant bore "burden to prove that the error affected the outcome of the proceeding, that is, that he would not have been bound over to the adult court"). *Morgan* thus refutes appellant's assertion that an error may affect the outcome of the proceeding simply because but for the error, the proceeding would have occurred in a different manner. Instead, *Morgan* indicates that an error affects the

outcome of a proceeding when but for the error, the ultimate outcome of the proceeding would have been different. *See State v. Mohamed*, Slip Op. 2017-Ohio-7468, – Ohio St.3d —, ¶26 (stating that plain error must affect "the outcome of the trial"); *Rogers* at ¶22 (explaining that plain error "must have affected the outcome of the trial"); *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶36, quoting *Bethel* at ¶87 (explaining that when public-trial violation occurs, "'[if] a new hearing could not materially change the position of the parties, there is no need for either a new hearing or a new trial'"); *Hill,* 92 Ohio St.3d at 203 ("Reversal is warranted only if the outcome of the trial clearly would have been different absent the error."); *see United States v. Davila*, 133 S.Ct. 2139, 2147, 186 L.Ed.2d 139 (2013), quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 90 (2002) (stating that "'a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea'").

{¶ 27} In the case sub judice, appellant has not raised any argument that the ultimate outcome of the proceedings would have been different if the court had engaged in an analysis to determine whether closing the courtroom to children violated appellant's right to a public trial, or that the ultimate outcome of the proceedings would have been different if the court had allowed children to attend the proceedings. Furthermore, we point out that the record contains no evidence that anyone who wished to attend the proceedings was actually denied entrance to the courtroom. Even though appellant has children, nothing in the record indicates that they attempted to attend the proceedings and were denied entrance. Additionally, appellant does not contend that he would have not entered a guilty plea and been sentenced to nine years in prison if

children had attended the proceedings. Instead, he alleges that he is entitled to have completely open plea and sentencing hearings, without excluding children. Appellant, however, does not explain how any alleged violation of his public-trial right impacted his decision to plead guilty, or the court's decision to impose a nine-year prison sentence. Consequently, appellant cannot show that any obvious error the court may have committed by issuing a notice[5] excluding children from the courtroom affected the outcome of the proceedings. Appellant has not raised any argument that the outcome of the proceedings (i.e., his guilty plea and nine-year prison sentence) would have been any different if the court had not issued a notice to exclude children from his plea and sentencing hearings. Thus, even if appellant showed that the court's notice to exclude children obviously violates his public-trial right, he cannot illustrate that the outcome of the proceedings would have been different in the absence of the alleged error.

{¶ 28} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

D

INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 29} In his second assignment of error, appellant argues that trial counsel's failure to object to the alleged public-trial violation constitutes ineffective assistance counsel.

1

Ineffective Assistance of Counsel Standard

{¶ 30} The Sixth Amendment to the United States Constitution and Article I, Section 10

---

[5] We presume for purposes of this appeal that the notice that contained the assignment commissioner's signature constituted an order from the trial court.

of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, —— U.S. ——, 134 S.Ct. 1081, 1087–1088, 188 L.Ed.2d 1 (2014) (explaining that the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶ 31} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Obermiller*, 147 Ohio St.3d 175, 2016–Ohio–1594, 63 N.E.3d 93, ¶83; State v. Powell, 132 Ohio St.3d 233, 2012–Ohio–2577, 971 N.E.2d 865, ¶85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶ 32} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 134 S.Ct. at 1088. "Prevailing professional norms dictate that with regard to decisions pertaining to legal proceedings, 'a lawyer must have "full authority to manage

the conduct of the trial.""" *Obermiller* at ¶85, quoting *State v. Pasqualone*, 121 Ohio St.3d 186, 2009–Ohio–315, 903 N.E.2d 270, ¶24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton*, 134 S.Ct. at 1088, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶95 (citations omitted); *accord Hinton*, 134 S.Ct. at 1088, citing Padilla, 559 U.S. at 366; *State v. Wesson*, 137 Ohio St.3d 309, 2013–Ohio–4575, 999 N.E.2d 557, ¶81.

{¶ 33} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶10, citing State v. Smith, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., Obermiller* at ¶84; *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶ 34} To establish prejudice, a defendant ordinarily must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 134 S.Ct. at 1089, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 134 S.Ct. at 1089, quoting *Strickland*, 466 U.S. at 695. Furthermore, courts may not simply assume the existence of prejudice, but must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003–Ohio–1707, ¶22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002). As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014–Ohio–3123, ¶22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013–Ohio–2890, ¶25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012–Ohio–1625, ¶25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009–Ohio–6191, ¶68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012–Ohio–2577, 971 N.E.2d 865, ¶86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).[6]

---

[6] In *Weaver*, the United States Supreme Court stated that "the prejudice inquiry is not meant to be applied in a 'mechanical' fashion." *Id.* at 1911, quoting *Strickland*, 466 U.S. at 696. Instead, "when a court is evaluating an ineffective-assistance claim, the ultimate inquiry must concentrate on 'the fundamental fairness of the proceeding.'" *Id.* at 1911, quoting *Strickland*, 466 U.S. at 696. The *Weaver* court did not, however, hold that "even if there is no showing of a reasonable probability of a different outcome, relief still must be granted if the [defendant] shows that attorney errors rendered the trial fundamentally unfair." *Id.* Rather, the *Weaver* court simply presumed, "[f]or analytical purposes," that this interpretation is correct and did not actually decide the issue. *Id.*

2

Ineffective Assistance in Public-trial Context

{¶ 35} In *Weaver*, the court directly addressed a defendant's assertion that trial counsel rendered ineffective assistance of counsel by failing to object at trial to an alleged public-trial violation. The *Weaver* court rejected the assertion that an ineffective-assistance claim involving a public-trial violation, i.e., structural error, mandates automatic reversal. *Weaver* at 1911 ("when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically"). Instead, the court held that the general rules regarding ineffective-assistance claims apply to public-trial violations raised for the first time as an ineffective-assistance claim. *Id.* (stating that "the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes * * * to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair").

{¶ 36} In analyzing the defendant's ineffective-assistance claim, the court presumed that trial counsel performed deficiently by failing to object to the closure. The *Weaver* court concluded, however, that the defendant could not establish the second component of an ineffective-assistance claim. The court determined that the defendant did not establish "a reasonable probability that the jury would not have convicted him if his attorney had objected to the closure." *Id.* at 1912. The court explained:

> It is of course possible that potential jurors might have behaved differently if petitioner's family had been present. And it is true that the presence of the public might have had some bearing on juror reaction. But here petitioner offered no "evidence or legal argument establishing prejudice" in the sense of a reasonable probability of a different outcome but for counsel's failure to object.

App. To Pet. For Cert. 64a; *see Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

*Id.* at 1912-1913.

{¶ 37} The court additionally rejected any argument that trial counsel's failure to object rendered the trial fundamentally unfair.  The court noted that the defendant's mother and her minister were excluded from the courtroom for two days during jury selection, but further pointed out that the "trial was not conducted in secret or in a remote place."  *Id.* at 1913.  The court further observed that

> [t]he closure was limited to voir dire; the courtroom remained open during the evidentiary phase of the trial; the closure decision apparently was made by court officers rather than the judge; there were many members of the venire who did not become jurors but who did observe the proceedings; and there was a record made of the proceedings that does not indicate any basis for concern, other than the closure itself.

*Id.*

The court also determined that none of

> the potential harms flowing from a courtroom closure came to pass in this case. For example, there is no suggestion that any juror lied during voir dire; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands.

*Id.*  The court ultimately concluded that the public-trial violation "did not pervade the whole trial or lead to basic unfairness."  *Id.*

{¶ 38} In the case at bar, even if we presume that trial counsel performed deficiently, appellant has failed to show a reasonable probability that the result of the proceedings would have been different if counsel had objected to the closure.  We again note that appellant did not argue that the ultimate result (guilty plea and ensuring sentence) might have been different if

counsel had objected. Instead, appellant claims that an objection would have caused the court to allow children to attend the proceedings. However, as we explain in our discussion of the plain-error doctrine, the result of the proceedings means the ultimate result of the proceeding or proceedings (bind-over to criminal court, finding of guilt, etc.), not the manner in which the proceeding was or was not conducted (without a guardian ad litem, with a closed courtroom, etc.). For example, in *Weaver* the court stated that the defendant failed to establish "prejudice in the ordinary sense, i.e., a reasonable probability that the jury would not have convicted him if his attorney had objected to the closure." *Id.* at 1912. The court did not indicate that the defendant could show prejudice simply by alleging that if counsel had objected to the closure, the court would have allowed the trial to proceed in a different manner. The prejudice inquiry examines the impact the alleged deficiency had on the overall outcome of the proceeding or proceedings and not simply the impact the alleged deficiency had on the manner in which the court conducted the proceedings. Otherwise, the rule would only require a defendant to show a reasonable probability that the court would have conducted the proceedings in a different manner.

{¶ 39} In the case sub judice, appellant did not argue that if trial counsel had objected to the alleged public-trial violation, he would not have entered his guilty plea or been sentenced to nine years in prison. Thus, he cannot show prejudice "in the ordinary sense." *Id.* Furthermore, assuming, as the *Weaver* court did, that a defendant may satisfy the prejudice component of an ineffective-assistance claim by demonstrating that the trial was fundamentally unfair, *id.* at 1913, in the case sub judice appellant cannot show that counsel's failure to object rendered the trial fundamentally unfair. Appellant did not suggest that anyone actually was prevented from entering the courtroom. The alleged closure did not exclude the entire

population, and the record contains no evidence that the courtroom doors were ever actually locked. Additionally, the decision to exclude children appears to have originated from the court's assignment commissioner, rather than from the trial judge. *Id.* (pointing out that "the closure decision apparently was made by court officers rather than the judge"). Also, the trial court made a record of the proceedings and there is no indication that the proceedings were conducted outside of the norm.

{¶ 40} Furthermore, a review of the record fails to suggest that any of "the potential harms flowing from a courtroom closure came to pass in this case." *Id.* at 1914. Nothing in the record shows that the prosecutor, judge, defense counsel, or any other party engaged in misbehavior or that "any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands." *Id.* at 1913.

{¶ 41} Consequently, after our review of the record in the case sub judice we do not believe that any public-trial violation that might have occurred "prevade[d] the whole trial or [led] to basic unfairness." *Id.* Appellant cannot, therefore, demonstrate that any alleged deficient performance affected the outcome of the proceedings or rendered the trial fundamentally unfair (again, presuming as the *Weaver* court did that fundamental unfairness is sufficient to satisfy the prejudice component of an ineffective-assistance claim).

{¶ 42} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## II

{¶ 43} In his third assignment of error, appellant asserts that the trial court erred by imposing unauthorized court costs. In particular, appellant asserts that the court wrongly

imposed mileage costs associated with the service of subpoenas. Appellant alleges that the sheriff's office served subpoenas on its officers who worked within the same sheriff's office and charged mileage for serving the subpoenas. Appellant argues that R.C. 311.17(B)(1) does not allow miles not traveled to be included in court costs.

{¶ 44} Initially, we point out that appellant did not object to the imposition of these court costs during the trial court proceedings. Consequently, he forfeited the error. *State v. Johnson*, 3rd Dist. Allen No. 1-16-41, 2017-Ohio-6930, 2017 WL 3129378, ¶24 (concluding that defendant's failure to object to costs during trial court proceedings forfeited the error); *see State v. Thomas*, 8th Dist. Cuyahoga No. 104567, 2017-Ohio-4436, 2017 WL 2687805, ¶5 (failure to object at sentencing to restitution order forfeits all but plain error on appeal); *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, 2017 WL 105959, ¶14 (failure to object to during trial court proceedings forfeits sentencing issues absent plain error). We may, however, review it using a plain-error analysis.

{¶ 45} Generally, we recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *E.g.*, *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 46} In the case at bar, appellant did not suggest that we review his assignment of error

using a plain error analysis.   We therefore decline to do so sua sponte.[7]   *State v. Steers*, 4th Dist. Washington No. 11CA33, 2013-Ohio-3266, 2013 WL 3895819, ¶20; *State v. Suman*, 4th Dist. Athens No. 10CA11, 2010–Ohio–6204, ¶43. *Accord State v. Wright*, 9th Dist. Summit No. 25638, 2011–Ohio–5641, ¶5, quoting *State v. Arnold*, 9th Dist. Summit No. 24400, 2009–Ohio–2108, ¶8 ("'[T]his Court will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal.'").

{¶ 47} In any event, we find it questionable whether any incorrect mileage charges would affect appellant's "substantial rights" and require us to reverse in order to correct a manifest miscarriage of justice.  *See State v. Taylor*, 4th Dist. Adams No. 16CA1028 2017-Ohio-4395, 2017 WL 2655848, ¶17 (finding it "uncertain whether any difference that might exist between the two [court cost] figures would affect 'substantial rights'"); *see also State v. Allen*, 8th Dist. Cuyahoga No. 96952, 2012-Ohio-1193, 2012 WL 986206, ¶11 (pointing out that defendant's agreement to "pay more than $20,000 as restitution" indicated "that the imposition of $774.00 for court costs and a fine is not promoting a manifest miscarriage of justice").

{¶ 48} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

[7] We also point out that while the record contains the clerk's execution of costs in the amount of $1,415, the record does not contain copies of the subpoenas to which appellant refers in his appellate brief or reveal how court costs were calculated.

Harsha, J., concurring:

{¶ 49} Initially, I conclude it would indeed be risky for the trial court to assume that anything in our disposition of the first two assignment of error would support the trial court's closure rule in the event of a proper objection during a trial or sentencing hearing.

{¶ 50} And although I concur in judgment and opinion on the first two assignments of error, I concur in judgment only on the third. I limit my concurrence to our discretion not address plain errors in this factual scenario.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment & Opinion as to Assignments of Error I & II & Concurs in Judgment Only as to Assignment of Error III
Hoover, J.: Concurs in Judgment Only

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.