[Cite as *State v. Smith*, 2013-Ohio-123.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25260 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. CRB-1102743 |
| v. | : | |
| | : | |
| SCOTT K. SMITH | : | (Criminal Appeal from |
| | : | Vandalia Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of January, 2013.

. . . . . . . . . .

DAVID J. CALDWELL, Atty. Reg. #0062211, City of Englewood Prosecutor's Office, 405 Public Square SW, Suite 243, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

SHAWN P. HOOKS, Atty. Reg. #0079100, Deal & Hooks, LLC, 131 North Ludlow Street, Suite 630, Dayton, Ohio 45420
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Scott K. Smith appeals from his conviction and sentence in Vandalia

Municipal Court on one count of failure to control a dog in violation of Englewood City

Ordinance 618.17.

{¶ 2}    Smith advances three assignments of error on appeal. The first two challenge the legal sufficiency and manifest weight of the evidence to support his conviction. The final assignment of error challenges a probation condition prohibiting him from having contact with the complaining witness.

{¶ 3}    The present appeal stems from an incident that occurred on October 21, 2011. Nicole Fischer testified at trial that she was walking her dog, Glory, around her block on a leash. As Fischer proceeded on the sidewalk, she saw Smith's dog, Penny, come from around the side of Smith's house and approach her barking. Immediately after passing Smith's house, she saw Penny run out of Smith's yard and into the next-door neighbor's yard near the sidewalk, where she was standing with Glory. According to Fischer, Penny bit Glory on the neck in the neighbor's yard. Fischer screamed when the bite occurred. She testified that someone then exited Smith's house and pulled Penny back into Smith's yard. Fischer called Englewood police after the incident.

{¶ 4}    Officer Ashley Taylor arrived shortly thereafter and observed swelling and bruising on Glory's neck. After talking to Fischer, Officer Taylor spoke with Smith, who explained that he had an underground, invisible electric fence and that Penny had an electric collar. According to Officer Taylor, Smith did not believe his dog had bitten Fischer's dog. Officer Taylor nevertheless cited Smith for failure to control a dog, a first-degree misdemeanor.

{¶ 5}    Smith testified in his own defense at trial. He also presented testimony from his fourteen-year-old son and his wife, Julie Smith. The three Smiths claimed to have witnessed the incident from different windows inside their house. The son testified that he was

in his upstairs bedroom about to shut the curtains when he saw Penny come around the corner barking at Fischer and Glory. He stated that Penny did not leave the Smiths' yard and did not bite Glory. Julie Smith testified that she was in her dining room near a window when she heard Penny barking. She looked outside and saw Fischer and Glory. She continued setting the table until her son "yelled down [that] Penny ran around front." Julie Smith went to the front door and saw Penny "almost cowering" in the Smiths' yard. She went outside, grabbed Penny by the electric collar, and went back inside. On cross examination, Julie Smith conceded that there could have been "an altercation between the dogs" because she did not see everything.

{¶ 6} Finally, defendant Smith testified that he was in his daughter's room upstairs closing her curtains when he looked out the window and saw Fischer and Glory. After a few moments, he saw Penny barking at them. He continued watching while his wife went out the front door to retrieve Penny. According to Smith, he never saw Penny leave his yard or bite Glory. After his wife grabbed Penny by the collar, Smith went downstairs and proceeded outside to help bring the dog inside. Immediately after securing Penny in the house, Smith went back outside with Penny's electric collar and tested the invisible fence. As he approached the buried electric fence, he received "a pretty good shock from it[.]" On cross examination, Smith admitted that he could not say whether anything had happened between the two dogs while he was proceeding downstairs to go outside.

{¶ 7} After hearing the foregoing testimony, the trial court ruled from the bench. It found Fischer's testimony more credible than the Smiths' testimony and credited her version of events. As a result, the trial court found defendant Smith guilty. It imposed a partially suspended fine and a suspended jail sentence. The trial court also placed Smith on five years

of probation with various conditions. One of those conditions required him to have no contact with Fischer. Others included obedience training for Penny, keeping the dog confined or restrained with something other than the electric fence, and purchasing dog-bite liability insurance. This appeal followed.

{¶ 8} As noted above, Smith's first two assignments of error challenge the legal sufficiency and manifest weight of the evidence to support his conviction. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 9} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387,

1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 10} With the foregoing standards in mind, we conclude that Smith's conviction is supported by legally sufficient evidence and is not against the weight of the evidence. With regard to sufficiency, Smith makes two arguments. First, he contends the State presented insufficient evidence to establish that he acted recklessly even if Penny did bite Glory. Second, he claims the State presented insufficient evidence to establish that he voluntarily failed to control Penny.

{¶ 11} Smith's first argument is based on the premise that the ordinance at issue, Englewood City Ordinance 618.17, does not impose strict liability. Smith reasons that the ordinance does not specify a mens rea and does not indicate a plain intent to impose strict liability. Therefore, he asserts that the mens rea needed to convict him is recklessness. Smith maintains that he did not act recklessly because he had a functioning electric fence.

{¶ 12} Upon review, we are unpersuaded by Smith's argument. He was convicted of violating Englewood City Ordinance 618.17(A)(4), which provides: "No person owning, keeping, possessing, harboring, maintaining, or having the care, custody or control of a dog shall suffer or permit such dog to: * * * Bite or otherwise cause physical harm to any other person, domestic animal or feline." As Smith acknowledges, this court recently held that identical language in a City of Dayton ordinance imposed strict liability. *See State v. Breitenstein*, 2d Dist. Montgomery No. 24325, 2011-Ohio-4450; *see*, *also*, *State v. Thaler*, 2d

Dist. Montgomery No. 22579, 2008-Ohio-5525. Although Smith urges us to reconsider *Breitenstein*, we decline to overrule a case we decided little more than a year ago. We find no persuasive reason to depart from *Breitenstein*, which is dispositive of Smith's first argument.

{¶ 13} Even though strict liability applies, Smith asserts in his second argument that the State still was required to prove a voluntary act. This issue was addressed in a concurring opinion in *Breitenstein*. The concurring judge noted that the prosecution always must prove the defendant acted of his own volition. *Breitenstein* at ¶15 (Froelich, J., concurring). That requirement was satisfied here. The evidence established that Smith voluntarily owned and controlled Penny and that he was responsible for securing the dog in his yard. There is no evidence that he was compelled to own and control the dog against his will. The facts of the present case are unlike *Breitenstein*, where the defendant was asleep and a neighbor took his dog for a walk without his knowledge. Therefore, we conclude that Smith's conviction is supported by legally sufficient evidence.

{¶ 14} With regard to manifest weight, Smith repeats his arguments about not acting recklessly and not engaging in a voluntary act. We find these arguments as unpersuasive in the context of a manifest-weight challenge as we did in the context of a sufficiency-of-the-evidence challenge. The first argument fails because strict liability applied. The second argument fails because the weight of the evidence supports a finding that Smith voluntarily (albeit perhaps not recklessly) "suffered or permitted" Penny to bite Glory.

{¶ 15} In a third argument, Smith contends the manifest weight of the evidence established that Penny never left his yard. As a result, he reasons that even if a bite occurred he had an affirmative defense based on trespass. This argument fails for at least two reasons.

First, Smith did not raise the affirmative defense of trespass at trial. He argued only that Penny did not bite Glory. Second, we cannot say the trial court clearly lost its way and created a manifest miscarriage of justice when it found Fischer's testimony more credible than the Smiths' testimony.[1] Fischer's testimony supports a finding that Penny ran from the Smiths' property and bit Glory on the neck in a neighbor's yard. In light of this testimony, which the trial court was entitled to credit, Smith had no affirmative defense of trespass.

{¶ 16}  Smith also contends he provided uncontroverted testimony that he had an electric fence, that the fence was working, and that the fence never had failed to control Penny. Smith reasons that his testimony established the impossibility of Penny leaving his yard to bite Glory. He further argues that the trial court erred in opining that "if a dog wants to leave a yard a dog's going to leave the yard." Smith maintains that this finding by the trial court was unsupported by any evidence. We disagree.

{¶ 17}  Having credited Fischer's testimony, the trial court reasonably could have concluded that, despite the presence of a working electric fence, Penny in fact *did* leave Smith's yard to bite Glory. That fact supports the trial court's observation, at least in this case, that "if a dog wants to leave a yard a dog's going to leave the yard." The first and second assignments of error are overruled.

---

[1] Among other things, the trial court questioned the veracity of the Smiths' testimony that they each happened to be at a window when Fischer and Glory appeared outside. We note too that other portions of the Smiths' testimony are logically inconsistent. For example, Julie Smith testified that she immediately ran outside and grabbed Penny by the collar when she heard barking and saw Fischer with Glory. She explained that she did so because "[w]e try to control our dog when things like that are happening." But if the electric fence was foolproof, as defendant Smith testified, then Julie Smith had no need to worry about controlling her dog. Even more curiously, defendant Smith testified that immediately after the incident, he brought Penny inside and removed the dog's electric collar. He took it outside to see whether the electric fence was working. But if Penny had not left the yard, as the Smiths all testified, he would have had no reason to question whether the fence was working.

**{¶ 18}** In his third assignment of error, Smith contends the trial court abused its discretion by ordering him to have "no contact" with Fischer as a condition of probation. For its part, the State has indicated "that it would not object to this Court remanding to the Trial Court for reconsideration of that portion of Appellant's sentence pertaining to a 'no contact' order between himself and Nicole Fischer."

**{¶ 19}** Although a trial court has considerable discretion when imposing conditions of probation, that discretion is not limitless. *State v. Lacey*, 2d Dist. Montgomery No. 23261, 2009-Ohio-6267, ¶8. Such conditions cannot be "'overly broad so as to unnecessarily impinge upon the probationer's liberty.'" *Id.*, quoting *State v. Jones*, 49 Ohio St.3d 51, 52, 550 N.E.2d 469 (1990). When "'determining whether a condition of probation is related to the interests of doing justice, rehabilitating the offender, and insuring his good behavior, courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory end of probation.'" *Id.*, quoting *Jones* at 53; *see*, *also*, *Id.* at ¶12 (recognizing that "the tests for reasonableness of a sanction are those announced in *Jones* regarding reasonableness of a condition of probation").

**{¶ 20}** In the present case, the trial court's order prohibiting Smith from having any contact with Fischer for five years is overly broad and unreasonable. It is overly broad because it prohibits even unintended, incidental, or chance encounters between these neighbors. It is unreasonable because it does not bear a direct relationship to the crime that occurred, has no apparent impact on "rehabilitating" Smith, and does not relate to any likely future criminality.

Smith was convicted of a misdemeanor because his dog left his yard and bit Fischer's dog. Although Smith was criminally responsible and Fischer was the complaining witness, the offense does not appear to be related to Smith and Fischer personally. The record contains no evidence of prior animosity, or even interaction, between Smith and Fischer. Nor does the record contain evidence to suggest that Smith might bother or harass Fischer in the future. The only time Smith ever sees Fischer is when she occasionally, and purposefully, walks her dog past his house. In light of these facts, we believe the five-year no-contact order is improper. Smith's third assignment of error is sustained.

{¶ 21} Having sustained the third assignment of error, we hereby modify the trial court's judgment by eliminating the no-contact order. As so modified, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

David J. Caldwell
Shawn P. Hooks
Hon. Cynthia M. Heck

Case Name:        *State of Ohio v. Scott K. Smith*
Case No:          Montgomery App. No. 25260
Panel:         Donovan, Froelich, Hall
Author:           Michael T. Hall
Summary: