[Cite as *State v. Withers*, 2026-Ohio-2290.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :       Case No.  25CA16

    v.                             :

ADAM WITHERS,                           :       DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.           :

_____
APPEARANCES:

April F. Campbell, Dublin, Ohio, for appellant.[1]

Robert A. Chamberlain, Pickaway County Assistant Prosecuting
Attorney, Circleville, Ohio, for appellee.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:6-9-26
ABELE, J.

{¶1} This is an appeal from a Pickaway County Common Pleas

Court judgment of conviction and sentence.  Adam Withers,

defendant below and appellant herein, assigns the following

errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "WITHERS'S RIGHT TO A FAIR TRIAL WAS DENIED
> BY THE TRIAL COURT'S DECISION TO ALLOW THE
> STATE TO USE EVIDENCE OF THE PRIOR 2023
> ATTACK, AND PREVIOUS INCIDENCES OF FAILURE
> TO CONFINE, IN VIOLATION OF EVID.R. 401,
> 403, 404, AND THE DUE PROCESS CLAUSE."

_____

[1] Different counsel represented appellant during the trial court
proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE EVIDENCE THAT WITHERS COMMITTED
INVOLUNTARY MANSLAUGHTER AND FAILED TO
CONFINE HIS DOGS WAS LEGALLY INSUFFICIENT."

THIRD ASSIGNMENT OF ERROR:

"WITHERS' CONVICTIONS SHOULD BE REVERSED
BECAUSE HIS COUNSEL WAS PREJUDICIALLY
INEFFECTIVE."

{¶2} The facts of this case are horrific and tragic. In October 2024, two pit bull dogs ran from the residence that appellant shared with his mother and attacked, and fatally wounded, the next-door neighbor who had been outside tending her garden. Shortly thereafter, law enforcement officers located the dogs responsible for the attack and ended their lives.

{¶3} A Pickaway County Grand Jury subsequently returned an indictment that charged appellant with (1) involuntary manslaughter, in violation of R.C. 2903.04(A), a first-degree felony, (2) failure to confine or restrain a dog, in violation of former R.C. 955.22(C)(1), a fourth-degree felony, and (3) failure to reasonably control a dog, in violation of former R.C. 955.22(C)(2), a fourth-degree felony.[2] The State later filed an additional indictment that added three new offenses: (1) involuntary manslaughter, in violation of R.C. 2903.04(B), a

---

[2] We note that, effective March 20, 2026, the General Assembly revised R.C. Chapter 955. Because these amendments were not in effect at the time appellant allegedly committed the offenses, we apply the previous versions of the relevant statutes.

third-degree felony; (2) failure to confine or restrain a dog, in violation of former R.C. 955.22(C), a third-degree misdemeanor; and (3) failure to reasonably control a dog, in violation of former R.C. 955.22(C), a third-degree misdemeanor. Appellant entered not-guilty pleas.

{¶4} At trial, the State's first witness, Kimberlee Black, described a dreadful October 2023 day when one of appellant's dogs attacked and killed her puppy. Appellant's dog also bit Black's arm. The dog's attack caused Black to suffer a broken wrist and two broken fingers.

{¶5} Carol Edgar testified that, on the day of the incident, she heard screaming and a person crying for help. Edgar ran toward the commotion and observed two pit bulls attack something that she thought may have been another dog. She then ran to her garage to grab her phone. As soon as she picked up her phone, she saw the dogs running in her direction. Edgar stated that the dogs entered her garage, and one dog slammed into her and knocked her into the wall of her garage. She regained her balance, and when she turned, she found one dog on each side of her. Each dog hit her three times and then ran out of the garage. After the dogs left, Edgar called 911.

{¶6} Ashville Police Sergeant Antonio Jester testified that he responded to Edgar's 911 call. When he arrived, he observed the blood-soaked victim lying on the ground. He exited his

cruiser to render first aid to the victim, but the two dogs charged him. Jester pulled his weapon and fired a couple of shots toward the dogs. One dog took off running, but the other ran to the victim and bit her. Jester shot the dog, and the dog scampered into appellant's residence. Jester then attempted to help the victim until medics arrived.

{¶7} Sergeant Jester explained that, before the fatal October 2024 attack, he had responded to calls at appellant's residence on two prior occasions. The first call occurred on June 14, 2024, and the second call occurred on September 27, 2024. When the sergeant arrived at the residence on June 14, 2024, he discovered the "door was closed but it was not latched." He stated that, when officers knocked on the door, "the door just came open." Jester indicated that the dead bolt was missing from the door, and a towel had been stuffed in its place.

{¶8} Sergeant Jester further reported that, when he responded to the September 2024 call, the door remained in the same condition. Jester explained that he spoke with appellant about the condition of the door and appellant advised him that he had attempted to replace the dead bolt, but the one that he obtained did not fit.

{¶9} Appellant also testified in his defense. He explained that, on the date of the fatal attack, he left the residence in

the afternoon.  Appellant stated that, before he left the house, he placed the dogs in one of the bedrooms.  Appellant claimed that he then locked both the front porch and primary doors before he exited the residence through the garage door.  Appellant testified that he had "no idea" how the dogs escaped the house.

{¶10} After hearing the evidence, the jury found appellant guilty of all counts as charged in the indictment.

{¶11} On April 4, 2025, the trial court sentenced appellant.  Before sentencing, the court merged (1) the third-degree-felony involuntary-manslaughter offense with the first-degree-felony involuntary-manslaughter offense, and (2) the third-degree-misdemeanor R.C. 955.22(C) offenses with the fourth-degree-felony R.C. 955.22(C) offenses.  The court sentenced appellant to serve consecutive terms of imprisonment of (1) 11 to 16 1/2 years for the first-degree-felony involuntary-manslaughter offense, and (2) 18 months for each of the fourth-degree-felony R.C. 955.22(C) offenses.  This appeal followed.

I

{¶12} In his first assignment of error, appellant asserts that the trial court deprived him of his right to a fair trial by allowing the State to introduce evidence that allegedly violated Evid.R. 401, 403, and 404.  More specifically, appellant contends that the trial court erred by allowing the

State to introduce evidence regarding (1) the previous dog attack, and (2) the lack of a proper locking mechanism on the door to appellant's residence.[3]

A

{¶13} We initially observe that appellant did not object when the State introduced the aforementioned evidence at trial. We further point out that appellant's codefendant's trial counsel stated that she had "no objection with [the dog's previous victim] testifying to the element of a dangerous dog." At that point, the trial court asked appellant's trial counsel for input, and he stated that he did not "have anything to add."

{¶14} Moreover, the record does not indicate that appellant objected when the previous attack victim testified about the circumstances surrounding the attack. Appellant likewise failed to object to the testimony regarding the lack of a proper locking mechanism on the door to appellant's residence. Thus, because appellant did not object to the admission of the evidence at trial, he forfeited the issue for purposes of appeal. *See State v. Fips*, 2026-Ohio-1207, ¶ 23 (a defendant

---

[3] We observe that appellant's assignment of error asserts that the court erred by allowing the State to introduce evidence regarding "previous incidences of failure to confine." Appellant's brief does not, however, raise any argument that the trial court allowed the State to introduce evidence regarding any prior occasions when appellant failed to confine the dogs. Instead, appellant's argument appears limited to the State's evidence that, on prior occasions, law enforcement officers had observed that the door to appellant's residence did not properly latch.

forfeits an argument for purposes of appeal if the defendant fails to raise the argument before the trial court); *In re T.D.S.*, 2024-Ohio-595, ¶ 36, quoting *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10 ("[a] first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below").

{¶15} Appellate courts may, however, in the exercise of their discretion consider a forfeited argument using a plain-error analysis. *See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 2015-Ohio-3731, ¶ 27 (a reviewing court has discretion to consider forfeited constitutional challenges); *see also Hill v. Urbana*, 79 Ohio St.3d 130, 133-34 (1997), quoting *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus ("'[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it'"); *State v. Pyles*, 2015-Ohio-5594, ¶ 82 (7th Dist.), quoting *State v. Jones*, 2008-Ohio-1541, ¶ 65 (7th Dist.) (the plain-error doctrine "'is a wholly discretionary doctrine'"); *DeVan v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-4279, ¶ 9 (8th Dist.) (an appellate court retains discretion to consider forfeited argument); *see Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018) (indicating that a court has discretion whether to recognize plain error).

{¶16} For the plain-error doctrine to apply, the party claiming error must establish each of the following:  (1) "'an error, i.e., a deviation from a legal rule'" occurred; (2) the error was "'an "obvious" defect in the trial proceedings'"; and (3) this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the [proceedings].'" *State v. Rogers*, 2015-Ohio-2459, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse [e]ffect on the character and public confidence in judicial proceedings").

{¶17} In the case before us, as we explain below, we do not believe that the trial court obviously deviated from a legal rule when it allowed the State to present the evidence. Consequently, the plain-error doctrine does not apply.

B

{¶18} As a general rule, all relevant evidence is admissible.  Evid.R. 402.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid.R. 401.

{¶19} Relevant evidence is not admissible, however, if otherwise prohibited. *See* Evid.R. 402 (relevant evidence is admissible except as otherwise provided by the federal or state constitution, by statute, or by rule). As pertinent in the case sub judice, Evid.R. 404(B)(1) precludes the admission into evidence of another "crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(2), however, allows this type of evidence when offered for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Thus, other-acts evidence is not admissible when the sole purpose of the evidence "is to show the accused's propensity or inclination to commit crime." *State v. Hartman*, 2020-Ohio-4440, ¶ 20, quoting *State v. Curry*, 43 Ohio St.2d 66, 68 (1975), citing 1 Underhill's Criminal Evidence, Section 205, at 595 (6th Ed.1973). Other-acts evidence is admissible, however, so long as the evidence relates to a permissible purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *Hartman*, 2020-Ohio-4440, at ¶ 22. Accordingly, other-acts evidence is

admissible when (1) the evidence is "relevant for an appropriate purpose other than showing the defendant's propensity to commit crime," and (2) when the probative value of the evidence is not "'substantially outweighed by the danger of unfair prejudice.'" *State v. Echols*, 2024-Ohio-5088, ¶ 29, quoting *Hartman* at ¶ 29.

**{¶20}** Appellant first contends that the evidence regarding the previous dog attack constitutes inadmissible propensity evidence.

**{¶21}** We observe that Evid.R. 404(B) prohibits other-acts evidence when it is offered "to prove *a person's* character in order to show that on a particular occasion *the person* acted in accordance with the character." (Emphases added.) According to R.C. 955.03, a dog is personal property, not a person. *See* former R.C. 955.03 ("Any dog which has been registered under sections 955.01 and 955.04 of the Revised Code and any dog not required to be registered under such sections shall be considered as personal property and have all the rights and privileges and be subject to like restraints as other livestock."); *State v. Jones*, 2019-Ohio-5159, ¶ 10 ("dogs are considered personal property in Ohio"); *cf.* R.C. 1.59(C) ("'Person' includes an individual, corporation, business trust, estate, trust, partnership, and association."); *see also State v. Moore*, 2013-Ohio-3365, ¶ 49 (10th Dist.) ("[t]he dog was not

on trial in this case, so evidence of bad acts by the dog does not implicate Evid.R. 404(B)"). Thus, by its terms, Evid.R. 404(B) does not apply to evidence regarding a dog's other "crime, wrong, or act." Consequently, the trial court did not contravene Evid.R. 404(B) by allowing the State to introduce evidence regarding the dog's prior attack.

{¶22} Appellant additionally argues that evidence regarding the previous attack "was not relevant to prove that [the dog] was a vicious dog." He contends that the evidence was not relevant because the State did not need to prove that the dog previously had been designated a vicious or dangerous dog in order to convict appellant. In arguing that the evidence was not relevant, appellant asserts that, in *Jones*, 2019-Ohio-5159, the court held that "a prior designation of a dog is not required to prosecute its owner for being dangerous or vicious." Appellant thus claims that evidence regarding the dog's prior attack was not relevant to prove any element at issue.

{¶23} We do not agree with appellant's interpretation of *Jones*. In *Jones*, the court stated that a dog need not "be *formally* designated as a dangerous dog before an owner, keeper, or harborer can be prosecuted for noncompliance with R.C. 955.22's dangerous-dog provisions." (Emphasis added.) *Jones*, 2019-Ohio-5159, at ¶ 20. The court indicated that the State could prove a violation of R.C. 955.22 by producing other

evidence demonstrating the dog's dangerousness.  *See id.* at ¶ 19.  For example, the prosecution may prove a dog's dangerous by establishing that the dog previously "caused injury to a person, killed another dog, or was the subject of three or more violations under R.C. 955.22(C)," *id.* at ¶ 24.  Thus, contrary to appellant's assertion, *Jones* does not indicate that evidence regarding a dog's dangerousness is irrelevant in a prosecution involving R.C. 955.22.  Instead, "the prosecution may prove the dog's dangerousness at trial."  *Id.* at ¶ 21.

{¶24} In the case at bar, the prosecution sought to prove at trial that the dog was (1) a vicious dog to classify the R.C. 955.22(C) offenses as fourth-degree felonies under the provision contained in former R.C. 955.99(H)(1)(a), and (2) a dangerous dog to classify the R.C. 955.22(C) offenses as third-degree misdemeanors under former R.C. 955.99(G).[4]  To establish that the dog was a dangerous dog, the State needed to present evidence that the dog previously (1) "[c]aused injury, other than killing or serious injury, to any person," (2) "killed another dog," or (3) was the subject of three or more violations under former R.C. 955.22(C).  *See* former R.C. 955.11(A)(1).  To establish

---

[4] Former R.C. 955.99(H)(1) provided that a person who violated R.C. 955.22 was guilty of a fourth-degree felony if the dog was a vicious dog and killed a person.

Former R.C. 955.99(G) stated that a person who violated R.C. 955.22(C) was guilty of a third-degree misdemeanor if the offense involved a dangerous dog and if the offender had a prior R.C. 955.22(C) violation.

that the dog was a vicious dog, the State needed to present evidence that the dog "has killed or caused serious injury to any person." *See* former R.C. 955.11(A)(6). The evidence that appellant's dog previously killed another dog helped demonstrate that the dog was a dangerous dog within the meaning of former R.C. 955.11(A)(1). Evidence that the dog previously caused serious injury to another person helped to illustrate that the dog was a vicious dog within the meaning of former R.C. 955.11(A)(6). Thus, contrary to appellant's contention, the evidence was relevant to help establish the dog as a dangerous or vicious dog.

{¶25} Appellant also claims that, even if evidence of the previous attack was relevant, the prejudicial effect of the evidence outweighed its probative value.

{¶26} Relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). Evidence is not unfairly prejudicial simply because it may damage a defendant's case. "Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant" *State v. Skatzes*, 2004-Ohio-6391, ¶ 107. Instead, unfairly prejudicial evidence is evidence that "might result in an improper basis for a jury decision." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169,

172 (2001), quoting Weissenberger's Ohio Evidence 85-87, § 403.3

(2000).   It is evidence that arouses the jury's emotions, that

"'evokes a sense of horror,'" or that "'appeals to an instinct

to punish.'"   *Id.*   "'Usually, although not always, unfairly

prejudicial evidence appeals to the jury's emotions rather than

intellect.'"   *Id.*   Thus, "[u]nfavorable evidence is not

equivalent to unfairly prejudicial evidence."   *State v. Bowman*,

144 Ohio App.3d 179, 185 (12th Dist. 2001); *see also*).

{¶27} In the case before us, we do not believe that the

trial court obviously erred by failing to prohibit the evidence

regarding the prior dog attack as unfairly prejudicial.   Nothing

in the record suggests that the evidence sought to appeal to the

jury's emotion rather than to its intellect.   Furthermore, the

evidence was highly probative of the dog's dangerousness and

viciousness, and the prejudicial effect of the evidence did not

substantially outweigh its probative value.   *See State v. Hardy*,

2017-Ohio-7635, ¶ 69 (2d Dist.) ("the trial court did not err in

admitting evidence regarding the two prior attacks as the danger

of unfair prejudice was minimal and did not substantially

outweigh the probative value of the evidence").   Consequently,

we do not agree with appellant that the trial court erred by

allowing the State to introduce evidence regarding the prior dog

attack.

2

{¶28} Appellant next argues that the evidence that law enforcement officers previously observed the lack of a proper locking mechanism on appellant's front door constituted improper other-acts evidence. His brief does not, however, fully articulate this particular issue. Instead, appellant simply states, in a conclusory fashion, that the evidence was not relevant and that its "only purpose was propensity."

{¶29} We observe that appellate courts "are not obligated to . . . formulate legal arguments on behalf of the parties." *State v. Quarterman*, 2014-Ohio-4034, ¶ 19; *see State v. Clark*, 2025-Ohio-4410, ¶ 23 (appellate courts will not "cobble together an argument for an appellant"); *In re Application of Columbus S. Power Co.*, 2011-Ohio-2638, ¶ 19 (appellate courts should not "develop a party's arguments"). "[W]e cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor. That's not how an adversarial system of adjudication works." *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir. 2013). Instead, "'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4, quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

{¶30} In the case sub judice, addressing appellant's argument regarding the lack of a proper locking mechanism would require us to create arguments on appellant's behalf. Because our role is to act as a neutral arbiter of the matters presented, we will not "cobble together an argument" for appellant, *see Clark*, 2025-Ohio-4410, at ¶ 23.

{¶31} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶32} In his second assignment of error, appellant asserts that the record does not contain sufficient evidence to support his convictions for involuntary manslaughter and for failing to confine his dogs.

A

{¶33} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. A reviewing court does not, however, "decide for itself whether the evidence establishes guilt beyond a reasonable doubt." *Bufkin v. Collins*, 604 U.S.

369, 386 (2025). Instead, "[s]ufficiency review essentially addresses whether 'the government's case was so lacking that it should not have even been submitted to the jury.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016), quoting *Burks v. United States,* 437 U.S. 1, 16 (1978) (emphasis omitted in *Musacchio*). Thus, the "critical inquiry" on appeal "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *e.g., State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶34} Additionally, courts that review sufficiency-of-the-evidence claims must remain mindful that the elements of an offense may be established by direct evidence, circumstantial evidence, or both. *See State v. Durr* (1991), 58 Ohio St.3d 86, 568 N.E.2d 674; *see also State v. Seymour*, 2026-Ohio-1249, ¶ 18 (sufficiency "review is not limited exclusively to testimony and other forms of direct evidence"). Circumstantial evidence

essentially means evidence that is "based on inference and not on personal knowledge or observation." *Black's Law Dictionary* (12th ed. 2024). Circumstantial evidence also has been "'defined as proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'" *State v. Roberts*, 2025-Ohio-5120, ¶ 140, quoting *State v. Griffin*, 13 Ohio App.3d 376, 377 (1st Dist. 1979); *see State v. Nicely*, 39 Ohio St.3d 147, 150 (1988), quoting Black's Law Dictionary 221 (5th Ed.1979) ("Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved . . . ").

{¶35} We further observe that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d at 272. Indeed, "'[c]ircumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable.'" *Nicely*, 39 Ohio St.3d at 151, quoting *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974). Consequently, "'circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a

reasonable doubt.'" *State v. McKnight*, 2005-Ohio-6046, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

{¶36} Accordingly, when reviewing an insufficient-evidence claim, an appellate court must construe the evidence and all reasonable inferences in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). A reviewing court will not overturn a conviction based on a claim of insufficient evidence unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

B

{¶37} In the case sub judice, the jury found appellant guilty of (1) involuntary manslaughter, in violation of R.C. 2903.04(A), (2) failure to confine a dog, in violation of R.C. 955.22(C)(1), and (2) failure to keep a dog under reasonable control, in violation of R.C. 955.22(C)(2).

{¶38} R.C. 2903.04(A) sets forth the offense of involuntary manslaughter and provides as follows: "(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

{¶39} Former R.C. 955.22(C) sets forth the offenses of failing to keep a dog confined and failing to keep a dog under reasonable control.  The statute provides as follows:

> Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:
> (1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;
> (2) Keep the dog under the reasonable control of some person.

{¶40} In the case sub judice, appellant contends that the State did not present sufficient evidence to establish that (1) he failed to keep the dogs confined or (2) he owned the dogs. Appellant contends that without this evidence, the State could not prove the underlying offense to support his involuntary-manslaughter conviction or the R.C. 955.22(C)(1) and (2) convictions.

1

Failure to Confine

{¶41} Appellant first argues that the State did not present sufficient evidence to demonstrate that he failed to confine the dogs.  He asserts that the evidence instead shows that he confined the dogs to the house by keeping them locked inside.

{¶42} We do not agree with appellant that the State failed to present sufficient evidence to support his conviction for

failing to keep the dogs confined within the meaning of R.C. 955.22(C)(1). As we noted above, the statute requires an "owner, keeper, or harborer of any dog" to "[k]eep the dog physically confined or restrained . . . by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape." Here, the State's evidence sufficiently established that appellant failed to keep the dogs physically confined or restrained by secure enclosure to prevent escape. The undisputed evidence shows that the dogs escaped appellant's residence. Hence, the enclosure, by definition, was not a secure enclosure to prevent escape. If it was a secure enclosure, then the dogs would not have escaped. Furthermore, the officers who examined the door to appellant's residence stated that the door did not properly latch. Even if appellant subjectively believed that the enclosure was secure, it obviously was not. We therefore do not agree with appellant that the State failed to present sufficient evidence to establish his noncompliance with the requirement to keep the dogs physically confined within the meaning of R.C. 955.22(C)(1). *See State v. Bennett*, 2018-Ohio-3114, ¶ 15 (5th Dist.) (evidence that a dog escaped the home during the owner's absence was sufficient to illustrate noncompliance with R.C. 955.22(C), even though the owner stated that she left the dog inside the home upon her departure); *Middleburg Hts. v. Troyan*,

2017-Ohio-7074, ¶ 17 (8th Dist.) (evidence sufficiently established a failure to comply with R.C. 955.22(C) when the evidence showed that a dog escaped through a fence); *see also State v. Caldwell*, 2016-Ohio-568, ¶ 26 (5th Dist.) (testimony describing "how the dog ran out of the house, through the garage, around [its] owner and attacked [the victim]" was sufficient to prove "that the dog was not under the adequate supervision of its owner"); *State v. Smith*, 2013-Ohio-123, ¶ 16-17 (2d Dist.) (evidence was sufficient to establish a dog owner's conviction under a municipal ordinance for permitting a dog to escape and bite another dog, despite owner's "testimony that he had an electric fence, that the fence was working, and that the fence never had failed to control [the dog]") *see generally State v. Squires*, 108 Ohio App.3d 716, 719 (2d Dist. 1996) ("[t]he concern of the statute is not the conduct of the owner but the potential for injury to persons and damage to their property presented by roaming dogs and the potential for injury to the animal involved").

2

Owner

{¶43} Appellant next contends that the State did not present sufficient evidence to establish that he owned the dogs.

{¶44} Former R.C. 955.22(C)(1) and (2) impose a duty upon an "owner, keeper, or harborer of any dog." "An owner is the

person to whom a dog belongs, while a keeper has physical control over the dog." *Flint v. Holbrook*, 80 Ohio App.3d 21, 25 (2d Dist.1992); *accord State v. Turic*, 2006-Ohio-6664, ¶ 16 (2d Dist.). "Keepership has a proprietary or dominion aspect, and involves the exercise of some degree of management, possession, care, custody or control over the dog." (Emphasis and citations omitted.) *Godsey v. Franz*, 1992 WL 48532, *3 (6th Dist. Mar. 13, 1992). "'In determining whether a person is a "harborer" . . . the focus shifts from possession and control over the dog to possession and control of the premises where the dog lives.'" *Flint*, 80 Ohio App.3d at 25, quoting *Godsey* at *3. "Thus, a harborer is one who has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence." (Emphasis and citation omitted.) *Id.* We further observe that "[t]wo or more persons may be owners, keepers and/or harborers of a single dog." *Godsey* at *3.

{¶45} In the case at bar, even if we assume for purposes of argument that the evidence failed to establish that appellant was an "owner" of the dogs, ample evidence was adduced at trial that he was a keeper or harborer of the dogs. The State's first witness testified that appellant referred to the dog that attacked her puppy as "my dog." Moreover, one of the investigating officers stated that, based on "past history of the dogs" and previous calls to appellant's residence, officers

determined that appellant was an owner of the dogs, even though his mother had registered the dogs in her name.

{¶46} Additionally, appellant lived at the premises with his mother and the dogs.  On the day of the attack, he was at home alone with the dogs from about 6:00 am until sometime in the afternoon.  Before he left the residence, appellant took each dog for a walk.  He also fed the dogs and gave them fresh water. As he left the house, he told the dogs that he "loved them." All of this evidence adequately demonstrates that appellant had either (1) some degree of management, possession, care, custody or control over the dogs, or (2) had possession and control of the premises where the dogs lived and acquiesced to their presence.

{¶47} In sum, we disagree with appellant that the evidence does not adequately show that he failed to keep the dogs confined within the meaning of R.C. 955.22(C)(1).  Furthermore, even if the evidence is not sufficient to establish that appellant was an "owner" of the dogs, ample evidence shows that he was a keeper or harborer of the dogs.  Thus, appellant's sufficiency arguments have no merit.

{¶48} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

{¶49} In his third assignment of error, appellant asserts that he did not receive the effective assistance of counsel. Appellant contends that trial counsel was ineffective for (1) introducing testimony regarding appellant's prior misdemeanors, and (2) failing to object to other-acts evidence.

A

{¶50} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶51} To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 2018-Ohio-1903, ¶ 183; *State v. Powell*, 2012-Ohio-2577, ¶ 85.

"Failure to establish either element is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.).  Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000) (a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶52} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community:  'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273.  Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." (Citations omitted.)  *State v. Conway*, 2006-Ohio-2815, ¶ 95. Furthermore, "'[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688.

{¶53} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"

*Strickland*, 466 U.S. at 689.  Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner."  *State v. Taylor*, 2008-Ohio-482, ¶ 10 (4th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985).  Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed . . . by the Sixth Amendment."  *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 2006-Ohio-6679, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156 (1988).

{¶54} To establish prejudice, a defendant must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 2011-Ohio-3641, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 2016-Ohio-8126, ¶ 91 (prejudice component requires a "but for" analysis).  "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder

would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695.

{¶55} Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require a defendant to affirmatively establish prejudice. *E.g.*, *State v. Clark*, 2003-Ohio-1707, ¶ 22 (4th Dist.); *State v. Tucker*, 2002 WL 507529 (4th Dist. Apr. 2, 2002). Additionally, we have repeatedly recognized that speculation is insufficient to establish the prejudice component of an ineffective-assistance-of-counsel claim. *E.g., State v. Tabor*, 2017-Ohio-8656, ¶ 34 (4th Dist.); *State v. Leonard*, 2009-Ohio-6191, ¶ 68 (4th Dist.); *accord State v. Powell*, 2012-Ohio-2577, ¶ 86 (a purely speculative argument cannot serve as the basis for an ineffectiveness claim).

B

{¶56} Appellant first asserts that trial counsel was ineffective for introducing evidence that appellant previously had been charged with misdemeanor offenses involving the dogs.

{¶57} During trial counsel's cross-examination of the dog warden, he asked the warden about several instances in which appellant had been charged with misdemeanor offenses related to the dogs. Trial counsel asked the dog warden to explain the outcome of those cases and he replied that all had been dismissed.

{¶58} We believe that trial counsel's cross-examination of the dog warden fell within "'the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'" *State v. Spaulding*, 2016-Ohio-8126, ¶ 90, quoting *Conway*, 2006-Ohio-2815, at ¶ 101.

{¶59} Furthermore, even if appellant could establish that trial counsel's cross-examination of the dog warden constituted deficient performance, appellant did not establish that the outcome of the trial would have been different if trial counsel had not asked the dog warden questions about appellant's previous misdemeanor charges.  We also point out that the dog warden did not discuss any of the offenses in detail, and trial counsel's questioning simply prompted the dog warden to admit that the cases had been dismissed.

C

{¶60} Appellant next asserts that trial counsel was ineffective for failing to object to improper other-acts testimony.  However, as we explained within our discussion of appellant's first assignment of error, appellant did not establish that the evidence regarding the prior dog attack was, in fact, other-acts evidence subject to Evid.R. 404(B).  Furthermore, even if trial counsel had objected to evidence regarding the dog's prior attack, appellant cannot establish a reasonable probability that the trial court would have excluded

the evidence.  The evidence was highly relevant to prove the dog's dangerousness or viciousness.  Thus, had trial counsel objected to the introduction of the evidence, the trial court likely would have overruled the objection.  Consequently, appellant's suggestion that the outcome of the trial would have been different is pure speculation.

{¶61} Appellant further argues that trial counsel did not object to additional "other acts evidence," which he states included "overly gruesome video evidence" and "pictures of the victim's death."  Appellant did not, however, develop this argument or explain why this evidence constituted improper other-acts evidence.  We therefore reject this argument.

{¶62} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.